AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Oregon

United States of America
v.
JASON HERNANDEZ CABALLERO
NOVEMBER HTOO
KEYDER MICHEL GALLARDO

*Defendant(s)*

Case No. 3:26-mj-00263

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 09/24/2026 in the county of Multnomah in the District of Oregon, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii) | Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), makes it illegal to possess with the intent to distribute 400 grams or more of a substance containing a detectable amount of fentanyl. |

This criminal complaint is based on these facts:

See the attached affidavit hereto.

☑ Continued on the attached sheet.

By Phone
*Complainant's signature*

Connor Crago, Special Agent, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:22 p.m.

Date: 9/25/26

*Judge's signature*

City and state: Portland, Oregon

Jeffrey Armistead, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss: AFFIDAVIT OF CONNOR CRAGO

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Connor Crago being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA"). As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I also am responsible for investigating drug-related crimes within the United States. Under 21 U.S.C. § 878, I am empowered to make arrests and obtain and execute search warrants. My current assignment is to the DEA Portland District Office. Since starting with the DEA in December 2024, I have participated in numerous narcotics investigations. My formal law enforcement training and experience includes 18 weeks at the Drug Enforcement Administration Training Academy at Quantico, Virginia. At the academy, I was trained in all aspects of conducting narcotics investigations to include debriefing defendants, witnesses, and informants, conducting surveillance, executing search warrants, conducting controlled purchases and deliveries of drugs, using law enforcement, open source, and social media databases, and seizing narcotics and narcotics related assets. I have also acquired knowledge and information about illegal drug trade and the various means and methods by which it is furthered from formal and informal training, other law enforcement Investigators, informants, and from my participation in multiple drug investigations. I have consulted and conversed with numerous other agents from various local, state, and federal agencies on drug cases of all types, including the distribution of narcotics and the laundering of drug proceeds. Because of this and my own training and experience, I am familiar with drug distribution and the

methods employed by drug traffickers. My civilian education includes a Master of Arts in Strategy, Cybersecurity, and Intelligence from the Johns Hopkins School of Advanced International Studies. My education gave me pertinent knowledge of transnational criminal operations, international criminal law, and international drug trafficking. In addition, I have been a member of the Army National Guard since August 2019. I currently serve as a Military Intelligence Officer. This position has given me classroom and practical training in logical reasoning, writing, and predictive analysis.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for **Jason HERNANDEZ CABALLERO** (herein "**HERNANDEZ**"), **November HTOO** (herein "**HTOO**"), and **Keyder MICHEL GALLARDO** (herein "**MICHEL**") for committing violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), 846, and 843: Possession with Intent to Distribute Controlled Substances, Conspiracy to Possess with Intent to Distribute Controlled Substances and Use of a Communication Facility in furtherance of a drug related crime ("Target Offenses").

3. This affidavit is intended only to show that there is sufficient probable cause for the above offenses and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

///

///

## Applicable Law

4. Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), 846, and 843: Possession with Intent to Distribute Controlled Substances, Conspiracy to Possess with Intent to Distribute Controlled Substances and Use of a Communication Facility in furtherance of a drug related crime ("Target Offenses").

## Statement of Probable Cause

### *Background Investigation*

5. Agents and officers comprising the Drug Enforcement Administration ("DEA"), HSI, Washington County Sheriff's Office, Tualatin Police Department, and Sherwood Police Department assigned to DEA-led federal task force D-51, (hereinafter collectively referred to as "Investigators") are investigating a Mexico-based drug trafficking organization ("DTO"). This DTO can traffic and distribute bulk quantities of narcotics to include methamphetamine, heroin, and fentanyl. This DTO operates in a "dispatch" style, meaning drug customers contact a dispatcher in Mexico who then relays the orders to locally based drug traffickers. To date, investigators have seized approximately 300 pounds of methamphetamine, approximately 15 kilograms of fentanyl, and distributable quantities of heroin and cocaine from this DTO along with thirteen federal arrests. In September 2026, Investigators identified **HERNANDEZ**, **HTOO**, and **MICHEL** as a bulk money couriers and drug couriers operating in Oregon on behalf of this DTO.

### *September 24, 2026: Investigators Execute Search Warrant at [redacted] SE Mill St Portland, OR*

6. On September 22, 2026, Investigators applied for and were granted a search warrant for a residence on SE Mill Street in Portland, Oregon the warrant was authorized by the Honorable Judge Jeffrey Armistead, District of Oregon (filed under 3:26-mc-00942-A).

[redacted]



[redacted]

[redacted] Below is the photo [redacted] of the suspected fentanyl:




***September 24, 2026: Investigators Execute Search Warrant at [redacted] SE 141st Ave Portland, OR***

9. On the evening of September 24, 2026, Investigators applied for and were granted a search warrant for the residence of **HERNANDEZ**, a residence located on SE 141st Ave Portland, OR ("Target Residence"). The warrant was authorized by the Honorable Judge Jeffrey Armistead, District of Oregon. On the same evening, Investigators executed the search warrant. Investigators approached Target Residence wearing vests identifying themselves as police and a car with red and blue lights. When Investigators approached the driveway of Target Residence, they noted a red Jeep SUV parked with the trunk towards the Target Residence and trunk open. Investigators watched **HTOO** and **MICHEL** hop over a fence from a patio in front of Target Residence**.** Investigators chased and detained both **HTOO** and **MICHEL**. A female was also detained standing near the front passenger door to the Jeep.

10. As Investigators chased **HTOO** and **MICHEL**, other Investigators approached Target Residence. Investigators knocked on the door and announced themselves as police in both English and Spanish. After waiting a reasonable amount of time with no answer, Investigators forced entry into Target Residence with a battering ram. Once inside, Investigators cleared through the house, finding no one. Investigators continued out a back door towards a detached garage and gated backyard. In the backyard, Investigators found and detained **HERNANDEZ**.

11. Once the Target Residence and detached garage were clear, Investigators individually Mirandized **HERNANDEZ**, **HTOO**, **MICHEL**, and the female. [redacted]. During a search of **HERNANDEZ**'s person, Investigators found approximately 80 gross grams of suspected heroin in the shorts **HERNANDEZ** was wearing.

12. Pursuant to the search, Investigators found over 5,000 gross grams of suspected fentanyl, over 1,000 gross grams of suspected heroin, and a smaller distributable quantity of methamphetamine. Beside the heroin found in **HERNANDEZ**'s pocket, the rest of the narcotics were found in the back seat of the red Jeep. A picture with some of the seized substances is below:



[redacted]. **HERNANDEZ** told Investigators he sells between one to two kilograms of fentanyl per week [redacted] **HERNANDEZ** told Investigators he receives fentanyl in shipments of approximately 4 kilograms at a time. **HERNANDEZ** consented to the search of his phone, but told Investigators he deleted pertinent messages between him and the Mexico-based dispatcher when he anticipated law enforcement was going to arrest him. [redacted]

14. **HERNANDEZ** told Investigators he learned of the search warrant Investigators executed at Mill Street earlier in the day and went to Target Residence to pack and grab the seized narcotics before he was going to flee. [redacted]

15. In a post-arrest interview of **HTOO**, **HTOO** told Investigators that [redacted]. **HTOO** said that he delivered the fentanyl

to Eugene, Salem, and Junction City. **HTOO** said that he was paid $1000 a week for doing the deliveries. **HTOO** consented to Investigators searching his phone, [redacted] Based on my training and experience, I know that it is common for Mexico-based drug dispatchers to be in contact with multiple couriers in a geographical area. Therefore, I believe both **HERNANDEZ** and **HTOO** worked under the direction of this dispatcher.

16. During a post-arrest interview with **MICHEL**, **MICHEL** told Investigators he would help break down kilogram bricks of fentanyl into smaller quantities for distribution at Target Residence. **MICHEL** said that he would heat seal the smaller quantities and help clean up the packaging from the fentanyl bricks. **MICHEL** said that he met with customers regularly [redacted] **MICHEL** said the largest quantity of fentanyl he saw in the garage at Target Residence was eight kilograms. **MICHEL** told Investigators he conducted drug deliveries on multiple occasions on his own [redacted] **MICHEL** consented to a search of his phone but told Investigators he regularly deleted messages on his phone because he did not want them to be used as evidence by police.

17. **MICHEL** told Investigators that he [redacted] gathering trash that contained wrapping from kilogram bricks of fentanyl to load the wrapping into the red Jeep when Investigators arrived. Investigators found a trash bag containing plastic wrapping with words such as "Rolex" and "Metal" written on them. During the interview of **HERNADNEZ**, **HERNANDEZ** told Investigators that two of the stamps he's seen on kilograms of fentanyl

lately are the Rolex logo and the word metal. Therefore, I believe this packaging in the trash was from kilograms of fentanyl that were broken into smaller quantities for distribution. A photo of one of the wrappings that says "Rolex" is below:




**Conclusion**

18. I believe that **HERNANDEZ**, **HTOO**, and **MICHEL** possessed with intent to distribute over 400 grams of fentanyl and 1000 grams of heroin. I also believe that **HERNANDEZ**, **HTOO**, and **MICHEL** are willing conspirators with Partida and other members of the DTO. Therefore, I believe that **HERNANDEZ**, **HTOO**, and **MICHEL** have committed violations of the Target Offenses.

19. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Nicole Bockelman, and AUSA Bockelman advised me that in her opinion, the affidavit and complaint

are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant for **HERNANDEZ**, **HTOO**, and **MICHEL**.

**Request for Sealing**

20. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time is likely to seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*/s/ Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*

Connor Crago
DEA Special Agent

Sworn to by telephone at 5:22 p.m. this 25th day of September 2026 in accordance with Fed. R. Crim. P. 4.1.

HONORABLE JEFFREY ARMISTEAD
United States Magistrate Judge